FILED
2017 Aug-03  AM 08:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MOYACCA JONES** | ) | |
| **Plaintiff,** | ) | **Case No:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DRUID CITY HOSPITAL** | ) | |
| **REGIONAL MEDICAL CENTER** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

### I.    PRELIMINARY STATEMENT

1.      Plaintiff Moyocca Jones brings this action pursuant to the provisions of Title VII of the Civil Rights Act 1964, 42 U.S.C. Section 2000e, et seq., as amended by the Civil Rights Act of 1991; 42 USCS Section 12112 as amended; 42 USCS Section 12131 et seq. as amended  and U.S.C. Sections 1981 and 1981A.  1983; 42 U.S.C. 2000e-5(b). Plaintiff contends that Defendants discriminated against her by harassing her and creating a hostile work environment which included subjecting her to extra and unfair scrutiny in her day to day job assignment because of her race (African-American), Sex (Female).  Plaintiff also contends that Defendants discriminated against her by subjecting her to unjustified discipline, and a denial of promotions and or promotional opportunities all due to her race, sex, and retaliation. Plaintiff further asserts that Defendants retaliated against her for having complained about such unjustified discipline and created a hostile working environment for her which caused her to suffer pain and anguish and a general decline in her health. All a direct result of the discriminatory treatment and retaliation.

1

## II.    JURISDICTION AND VENUE

2.    The jurisdiction of this court is invoked pursuant to 28 U.S.C. Sections 1331, 1343(3) and 1343(4). This is a suit instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq.; and 42 U.S.C. Sections 1981 and 1981A, 42 U.S.C. 2000e-5(b), providing for injunctive and other relief against race and sex discrimination and racial harassment and retaliation and reprisal.

### Venue

3.    Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3) and 5 U.S.C. §7703(b)(2); as Plaintiff was employed by Defendants in this judicial district, Plaintiff's employment records are maintained by Defendants in this judicial district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

## III.    ADMINISTRATIVE EXHAUSTION

4.    Plaintiff filed a timely charge of discrimination (846-2016-30621) on or about July 18, 2016, charging discrimination based on race, with the EEOC  (See Exhibit A attached hereto).

5.    Plaintiff received a Notice of Right to Sue from the EEOC regarding her claims less than ninety (90) days prior to filing this Complaint (see Exhibit "B" attached hereto).

IV.    **PARTIES**

6.      Plaintiff, Moyacca Jones is an individual that is a citizen of the United States of America and resided in Tuscaloosa County Alabama during all times relevant to this matter. Jones was employed as a Clinical Assessment Clinician at the Druid City Hospital Regional Medical Center North Harbor location from July 2015 until her unlawful termination.

7.      Defendant, Druid City Hospital Regional Medical Center is a business operating within the United States of America. Defendants during all times relevant to this action maintained offices in the State of Alabama located at 2700 Hospital Drive, Northport , Alabama 35476.

V.    **STATEMENT OF FACTS**

8.      Plaintiff avers and incorporates paragraphs 1-7 above as if fully set forth herein.

9.      Plaintiff was hired by Defendant in July of 2015 as a Clinical Assessment Clinician.

10.     Plaintiff has always performed her job duties and assignments at her place of employment with the Defendant is a highly a satisfactory manner prior to Defendants false allegations of malfeasance is said performance.

11.     On May 24, 2016, Plaintiff was counseled by Cody Epsy and Cindy Bohon for not recommending admittance on a patient without qualifying Mental Hygiene status.

3

12.     On 24, 2016 Plaintiff was improperly counseled and disciplined by her white supervisors Cody Epsy and Cindy Bohon for not recommending admittance of a patient who did not meet the Hospitals own criteria for a qualifying Mental Hygiene status for admission.

13.     During that meeting Plaintiff Moyocca Jones provided a detailed description of the exact situation and the basis for her concurrence with the decision not to admit the patient after the assessment by the E. R. Doctor on duty, that examined the patient and actually discharged the patient that day.

14.     On June 15, 2016 Plaintiff Moyocca Jones was counseled and disciplined by Cody Espy, Cindy Bohon, and Shelly Edwards for a concocted and false allegation that Plaintiff had committed a HIPPA violation that did not exist.

15.     Plaintiff then showed the Human Resources representatives the allegation was not a HIPPA violation and was actually an administrative error by another employee which by protocol was incorporated into an entry by Jones

16.     Despite being told and shown by Plaintiff that no HIPPA violation had occurred Jones was told that she was being discharged for having two violations within twelve months of each other but not shown the exact policy being invoked to terminate her employment.

17.     The white employee that entered the original information into the chart containing the alleged HIPPA violation was never disciplined or terminated for her actions.

18.     Prior to Plaintiff's discharge on the false charges against her Human Resources Representative Mildred Black approached Ms. Jones in response to an

anonymous phone call into Defendant's Hotline, where the caller expressed concerns about the adverse treatment Ms. Jones was being subjected to as well as other black employees at the facility.

19.     Ms. Black asked Ms. Jones if she had any knowledge of the anonymous call and Ms. Jones informed her she did not.

20.     Ms. Black also asked during the conversation with Plaintiff Jones if she had any concerns.

21.     Plaintiff Jones responded that she did not understand why her direct supervisor, Cody Espy would take her to the Executive Director, Shelly Edwards and/or Cindy Bohon with the smallest issues and concerns when he did not treat her white counterparts in that same manner.

22.     Ms. Black then suggested a work improvement plan for her supervisor Espy and her in an effort to improve their communication and eliminate the involvement of the executive director or human resources on those nominal issues.

23.     The improvement plan was represented to Jones not as a disciplinary related issue but a simple communications improvement plan for Plaintiff and Defendants to benefit from with better communications as the end result.

24.     The plan was to last 30 days, however it was extended past the 30 days with no explanation to Plaintiff for the extension or any indication that Plaintiff was not fulfilling her duties as required.

25.     The plan required meetings between Cody Espy and Ms. Jones where there was little interaction or conversation and Plaintiff was given no instructions, tasks, or feedback and the meetings lasted no more than five minutes a piece.

26.     Because of the lack of information she was receiving during these meetings and due to the extension of the plan with no feedback, Ms. Jones inquired as to how long the plan and meetings would continue but she did not receive a response.

27.     On March 23, 2016, Ms. Jones was called to Human Resources by Cindy Bohon and blindsided with a list of alleged errors and things she needed to improve during on, none of which were mentioned during the weekly meetings she was attending for the previous months with Cody Espy.

28.     Subsequently Ms. Jones went to Human Resources and filled out an internal complaint form requesting to speak with Mildred Black concerning the constant harassment and bullying she was being subjected to, by Cody Espy, Shelly Edwards and Cindy Bohon. Ms. Jones was performing her job in the same manner and process as her coworkers outside her protected class, but her work was constantly under heightened scrutiny and review.

29.     During her meeting with Mildred Black, days later Ms. Jones informed Ms. Black that Shelly Edwards had called an impromptu meeting addressing all the issues raised in her complaint. Ms. Black responded that no one had been informed of her Plaintiff's complaint.

30.     On the same day that Plaintiffs internal complaint was filed, Cindy Bohon called Ms. Jones on her cell phone and asked her how things were going.

31.     On May 24, 2016, everyone on staff was threatened/warned that if they made any error on the newly implemented inquiry forms that disciplinary action will be taken against them. The new inquiry form was different from the old form in that it

requested different information, and the layout was different.  Ms. Jones and her coworkers agreed to check each other's inquiry forms for errors.

32.     No other intake specialists were discharged like Plaintiff based on allegations of errors to the inquiry form in June of 2016 other than Ms. Jones.

33.     Plaintiff was aware at the time of her discharge that other intake specialists had errors on the old as well as new forms but none of them were discharged like the Plaintiff.

34.     On May 24, 2016, Ms. Jones called Dr. Sanjay Singh, the on-call psychiatrist and apprised him of the status of a patient's condition.  After informing Dr. Singh, he began to explain to Plaintiff why the patient was exhibiting the observed behaviors. Dr. Singh agreed with the emergency room doctors assessment to discharge the patient home with follow up services on an outpatient basis and Plaintiff's concurrence.  Plaintiff's phone call and discussion with Dr. Singh was made in the presence of a coworker and is documented in Meditech.

35.     Despite no wrongdoing Plaintiff written up based on Cody Espy's false allegations that the patient came back into the emergency room two hours later with suicidal ideations which is false.

36.     Espy's allegations are false because as per protocol Plaintiff notified and consulted with the doctors that were notified. The emergency room doctor(s) met with the patient face-to-face. They made the assessment of substance abuse, and the patient was coherent at that time she presented to the emergency room. The psychiatrist also explained the patient's behavior and why he agreed with the emergency room doctor's decision to discharge the patient to go home.

37.     Ms. Jones did not have authority to admit or discharge patients.

38.     During the disciplinary meeting, Cindy Bohon stated to Cody Espy, "If you ever see me on the side of the road with no clothes on; make sure you admit me to North Harbor." She continued to repeat that statement to Espy.

39.     Cindy Bohon reported erroneously that the patient attempted suicide later on that evening. The patient did not attempt suicide and there is no chart record or entry verifying such an event.

40.     On June 15, 2016, Ms. Jones was fired because of an alleged HIPPA violation that was previously entered into the record by another employee. Plaintiff was accused of providing the wrong address and date of birth on an inquiry form that she had no knowledge of. The inquiry form was originally generated by coworker and several of her coworkers copied the same error.

41.     Because Plaintiff was written up on May 24, 2016 she was informed that Human Resources was skipping steps in the progressive discipline policy and she was being fired about the inquiry form completed April 24, 2016. Shelly Edwards stated to Plaintiff, "Refuse to sign it, too." Plaintiff did refuse to sign this additional unwarranted and concocted disciplinary action.

42.     Ms. Jones was informed later that same day by coworkers that inquiry forms were brought to the emergency room and workers outside her protected class were instructed to and allowed to correct errors on inquiry forms they had completed so they could return them corrected and not be subject to discipline like the Plaintiff.

43.     The inquiry form Ms. Jones was fired for was one of the previous inquiry forms and before the warning for inquiry forms was given on May 17, 2016.

44.     Many workers made multiple errors on the new forms once instituted. So much so that as a part of the training, a clinician with the least errors received a gift card from Shelley Edwards.

45.     Despite the multiple errors by other clinicians outside Plaintiff's protected class, Plaintiff was singled out for discipline even though the error alleged occurred before the new forms or the new policy went into effect.


VI.     **CAUSES OF ACTION**

**Discrimination and Retaliation Under Title VII**

46.     Plaintiff avers and incorporates paragraphs 8-45 above as if fully set forth herein.

47.     Plaintiff was employed by Defendant from July 2015 until June 15th 2016.

48.     Throughout Plaintiff's employment with Defendants, Plaintiff performed her job duties in a highly competent manner including but not limited to routinely finishing her intakes faster and less time than her contemporaries.

49.     Plaintiff suffered unlawful employment practices including but not limited to discrimination and disparate treatment and subjection to a hostile work environment due to verbal harassment and intimidation from supervisory personnel, unfair discipline including but not limited to excess and unfair scrutiny of her performance, and being and her subsequent wrongful termination based on unsubstantiated claims of a HIPPA violation and intake forms errors which if any  were fewer and less frequent than her contemporaries outside her protected class.

50.     Plaintiff was discriminated retaliated against by being disciplined and then terminated outside the normal progressive discipline rules and regulations of the Defendant

51.     Plaintiff was also discriminated against by Defendants based on the false assertion that she failed to admit a patient when it was not her decision to admit or deny admission to the patient, and the Defendants own policies and procedures were followed above and beyond what was required of Plaintiff in properly concurring with the attending physician and psychologists assessment that the patient was not suitable for admission at the time in question.

52.     Plaintiff complained to Defendants regarding their discriminatory practices, harassing communications, excessive scrutiny, and negative and unwarranted job performance plan, including but not limited the overt excessive scrutiny she was subjected to while white and or male counterparts were not subjected these same conditions, nor were they falsely disciplined and terminated based on the discriminatory animus of the Defendant's and in retaliation for her reporting to them that she was being treated improperly based on her race and or sex primarily.

53.     Plaintiff was subjected to disparate treatment and in the terms and conditions of her employment and retaliation including, unjustified discipline, denial of basic support by Defendants, denial opportunities for advancement, excess scrutiny of her duties and performance on a regular basis, and other actions intended to harass, intimidate and deter Plaintiff from pursuing her equal rights under the law and her eventual claims of discrimination and retaliation.

54.     Plaintiff was subjected to a hostile work environment intended to force her failure in performance and otherwise interfere with her ability to perform her duties on a daily basis including but not limited to shortening the time allotted to complete and assessment below that of her counterparts outside her protected class, allowing other clinicians to review and correct intake forms to remove mistakes and escape the possibility of discipline but not allowing Plaintiff the same opportunity, and falsely claiming that name and address and birthday information on a form entered by a previous intake worker was a HIPPA violation when copied according to protocol in place at the time by the Plaintiff and then using it as pretext for discipline against the Plaintiff.

55.     Defendants have and do exhibit a pattern and practice of discrimination and retaliation against black employees including but not limited to excessive scrutiny and surveillance of black employees, denial of equal access and consideration for promotions and advancement especially when it comes to jobs and opportunities outside maintenance, housekeeping, food service etc. Defendant has also shown a propensity for only disciplining blacks especially within the intake area where Plaintiff formerly worked.

56.     Defendants discriminated and retaliated against Plaintiff with respect to job duties, and assignments, job evaluations, working conditions, hiring, promotion, hostile work environment, discipline, and other terms and conditions of employment in violation of Title VII  of the Civil Rights Act 1964, 42 U.S.C. Section 2000e, et seq., as amended by the Civil Rights act of 1991; 42 USCS Section 12112 as amended; and U.S.C. Sections 1981 and 1981A. 1983; 42 U.S.C. 2000e-5(b).

57.    Defendant's failed to properly consider Jones lack of prior disciplinary action against her in deciding to terminate her which was contrary to the Defendant's own progressive discipline guidelines.

58.    Defendants improperly terminated the Plaintiff for an unsubstantiated allegations of a HIPPA violation and retroactive punishment for an alleged error on an intake form but they have no history of using such a disciplinary process against an individual(s) outside Jones's protected class.

59.    Defendant's allowed other employees who had similar or possibly worse allegations of misconduct  against them but who were outside of Plaintiff's protected class to escape discipline altogether, or face discipline short of termination. That misconduct included multiple errors on intake forms and or other actions far beyond the fabricated HIPPA violation and form error used as pretext to terminate the Plaintiff.

## VII.   **DAMAGES**

60.    Plaintiff avers and incorporates paragraphs 46-59 above as if fully set forth herein.

61.    As a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages.

   a.    Plaintiff was discharged from employment with defendant based on discrimination and retaliation. Although plaintiff has diligently sought other employment, she has been unable to find and maintain steady employment comparable to the position from which he was wrongfully terminated. In addition, plaintiff has incurred expenses in seeking other employment and maintaining lodging for herself and family, and for her

personal upkeep and maintenance including heath care and insurance.

b.    Plaintiff suffered loss of accrued vacation, sick time, and pension or
      retirement benefits.

c.    Plaintiff suffered mental anguish and emotional distress in the form of
      lowered self-esteem, insomnia, minor depression, loss of or strain to
      friends and family relations.

d.    Plaintiff suffered physical illness in the form of headaches and loss of
      appetite, insomnia, weight loss, aggravation of his existing health
      challenges and conditions.

e.    Plaintiff has had to rely heavily on relative and or others for financial
      assistance to maintain a place to live and basic necessitates for herself
      and family which has been exacerbated by the Defendant's false
      testimony before that state unemployment compensation officials who
      have to date in reliance on the false assertions about Plaintiff's dismissal
      denied Plaintiff any of her accrued unemployment benefits.

f.    Plaintiff requests reinstatement to her prior job and location or a
      comparable or higher position available within the Hospital by
      Promotion to permanent status, with full rights and benefits as
      appropriate, Back pay, Front pay, Pre and Post judgment interest, and
      Compensatory and Punitive damages for the intentional and or negligent
      acts of the Defendant including but not limited to pain and suffering,

intentional infliction of emotional distress, harassment and a hostile work environment in an amount to be determined.

### Attorney Fees

62.    Plaintiff avers and incorporates paragraphs 60-61 above as if fully set forth herein.

63.    Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. §2000e-5

## VIII.   **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court assume jurisdiction of this action and provide relief as follows:

1.    Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs of Defendants are in violation of the rights of Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. Section 2000e, et seq. and 42 U.S.C. Sections 1981 and 1981a.

2.    Grant Plaintiff a permanent injunction enjoining defendants, their agents, successors, employees, attorneys and those acting in concert with Defendants and at Defendants' request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as

amended, 42 U.S.C. Section 2000e, et seq. and 42 U.S.C. Sections 1981
and 1981a.

3.    Enter an Order requiring Defendants to make Plaintiff whole by awarding
      Plaintiff back-pay, including lost wages, benefits and bonuses, and
      seniority, front-pay, back pay, plus interest, re-instatement, relocation, or
      compensation for loss of future income in lieu of relocation into the
      position Plaintiff would have held in the absence of discrimination and
      retaliation, and, whatever compensatory, punitive  and other damages the
      Court finds due and owed to plaintiff.

4.    Plaintiff further prays for such other relief and benefits as the cause of
      justice may require, including, but not limited to, and award of costs,
      attorneys' fees, and expenses incurred by this litigation.


        **PLAINTIFF HEREBY DEMANDS TRIAL BY STRUCK JURY.**



                                    Respectfully submitted,

                                    s/Moyacca Jones
                                    MOYACCA  JONES
                                    Plaintiff


                                    TYRONE TOWNSEND
                                    Attorney for Plaintiff

**PLAINTIFF'S ADDRESS**

Moyacca Jones
4209 Heathersage Circle
Tuscaloosa, Al 35405

**DEFENDANT'S ADDRESS**

Druid City Hospital Regional Medical Center
2700 Hospital Drive,
Northport, Alabama 35476.